**Thurman L. GAUSE, et al., Plaintiffs,**

v.

**The NORTH CAROLINA SHIPPING ASSOCIATION, INC., et al., Defendants.**

**No. 86–88–CIV–7.**

United States District Court,
E.D. North Carolina,
Wilmington Division.

Feb. 23, 1988.

Marvin Schiller, Richard W. Rutherford, Raleigh, N.C., for plaintiffs.

George T. Clark, Jr., Wilmington, N.C. and Graham & James, Charles A. Edwards, Raleigh, N.C., Fowler & Baldasare, Thomas L. Fowler, Research Triangle Park, N.C., Stuart V. Carter, Wilmington, N.C. and James R. Watson, Houston, Tex., Law Offices of Thomas W. Gleason, Kevin Marrinan, New York City, Charles T.L. Anderson, Chapel Hill, N.C., for defendants.

### ORDER

JAMES C. FOX, District Judge.

This matter is before the court on the employers' motion to reconsider the court's order [1] (hereinafter "Order") for summary judgment entered October 31, 1987, to the extent such order denied summary judgment based upon the existence of a genuine question with regard to the employers' con-

---

**1.** The instant order presumes familiarity with said order and the nomenclature contained therein.

tractual obligations to pay plaintiffs for drive time. Specifically, the court's order concluded, based on the evidence of record at that time, that there was a genuine issue of material fact as to the contractual intent of the parties in regard thereto arising under the 1984 contract between the employers and union. Order, at 34. Since the entry of the Order, affidavits have been filed which disclose the following additional and uncontroverted facts relevant to the 1984 Contract:

■ The Memorandum of Agreement executed February 4, 1984, amending the 1980 contract, indicated the addition of language to paragraph 3(B)(3)(d) of the latter without expressly deleting existent language which is the predicate for plaintiffs' instant action. That such deletion was intended by the employers and union (a fact the court now finds uncontroverted) is demonstrated by the following uncontroverted history.

Shortly after February 4, 1984, James I. Newsome, then employer chairman of the Negotiating Committee, became aware that the Memorandum of Agreement of said date was in error in that the subject deletion had not been indicated therein. The error came to his attention in conjunction with preparation for the printing of the 1984 Contract. This error was called to the attention of Perry C. Harvey, Jr., then union chairman of the Negotiating Committee, by Mr. Newsome's letter of February 24, 1984. The letter reads as follows:

This has reference to our recent negotiations wherein the joint committee agreed to Memorandum of Agreement Between the South Atlantic Employers' Negotiating Committee and the South Atlantic Longshore Negotiating Committee dated February 4, 1984.

Please refer to Item 9 of this agreement, the portion pertaining to paragraph 3(b)(3)(d) [sic] concerning the Wilmington/Southport gang situation. It was agreed that the second paragraph of 3(b)(3)(d) [sic] be deleted to allow for the new wording showed in the Memorandum of Agreement. This deletion should have been covered in the Memorandum of Agreement, and was not. Therefore, the various local agreements should delete the same.

The error with respect to the deletion was recognized independently by counsel for the employers who advised R.E. Barker, Employers Representative, of the same. The latter had been sent a copy of Mr. Newsome's correspondence to Mr. Harvey. Apparently Mr. Barker had overlooked the same, inasmuch as he wrote Mr. Harvey on August 13, 1984, as follows:

I have met with our attorney, Mr. George Clark, and he has brought up a very interesting subject—"in reading thru the memo of agreement dated February 4, 1984, and trying to get into our new contract booklet the proper wording, I have come upon a matter that I think needs clarification. At the very top of page four there is language dealing with paragraph 3(b)(3)(d) [sic] and it adds two paragraphs after the words "covered personnel". Some of that language conflicts with language that was not specifically deleted and it is my thinking that the rest of that numbered paragraph in the old contract, after the words "covered personnel", should be specifically deleted and the words that we have added should be substituted for the balance of that paragraph after the words "covered personnel".

It is my distinct recollection that this was a specific intent of everyone during the contract negotiations and since some of the wording that was added after the words "covered personnel" is in direct conflict with words that were not specifically deleted, I believe that Mr. Clark's suggestion should be followed.

It doesn't seem the right thing to do to have the new contract printed up with the conflicts between the language in the old contract and the new contract.

Possibly both of you gentlemen could jointly send me a wire stating that it was the intent to delete this paragraph and that would help us in the event a law suit were to come into play. If either of you have any questions in this regard, please give me a call.

No response by Mr. Harvey to either Mr. Newsome's letter of February 24, 1984, or Mr. Barker's letter of August 13, 1984, has been found, but the agreement of the union negotiators on the issue is evidenced by the following avowals of Mr. Newsome:

(a) Mr. Newsome affirmatively states he did not receive a negative reply from Mr. Harvey.[2]

(b) The language relied upon by plaintiffs was deleted from the printed contracts as requested in Mr. Newsome's letter.

(c) The local contract signed and accepted by the employers and union in the Ports of Wilmington, North Carolina, Charleston, South Carolina, Savannah, Georgia, and Jacksonville, Florida, reflected that the language which Mr. Newsome requested to be deleted therefrom in his letter of February 24 in fact was deleted.

(d) Five contract booklets were prepared for Savannah, Tampa, Jacksonville, Charleston and Wilmington, each of which contained the corrected language of paragraph 3(B)(3)(d).

Although no response from Mr. Harvey to either Mr. Newsome's letter or Mr. Barker's letter has been found, his agreement that the deletion had occurred is further evidenced by his September 2, 1986, letter to Local 1838 regarding "Riding Time from Southport to Wilmington," advising its members as follows:

I have been involved in the Southport/Wilmington situation for several years. Mr. Adams and Mr. Rogers can verify that I got out of my hospital bed prior to major surgery to go to Atlanta in order to settle the situation that existed between Southport and Wilmington. It was never my understanding (regardless of what the contract said) that the company would pay for riding time. Please bear in mind that this was a special agreement between the ILA, employers and the GAI Fund. IN ALL FAIRNESS TO THE EMPLOYERS THEY HAVE NEVER AGREED TO RIDING TIME. The Wilmington employers disagreed vehemently to the interchange of work between Southport and Wilmington. Reluctantly the Wilmington employers finally agreed to the interchange of work.

Mr. Nelson Adams, President of Local 1838 has been persistent in his endeavors to secure riding time for the men between Southport and Wilmington. I told Mr. Adams that there might be a possibility of the GAI Fund bearing the brunt of this cost for riding time. We have had several meetings with the employers and GAI Trustees and they both disagreed with the payment of riding time; therefore, in my opinion, the problem should be put to rest.

Notwithstanding ample opportunity for discovery, plaintiffs have submitted nothing to the court which would controvert defendants' evidence that the parties to the 1984 Contract (employers and union) intended to delete the language which is the predicate for plaintiffs' law suit. The failure to expressly delete such language was demonstrably a mutual error of the contracting parties. There is no evidence to the contrary. Indeed, the record is devoid of any indication that plaintiffs have attempted to depose the members of the 1984 Negotiating Committee with a view toward controverting the affirmative assertions of Messrs. Newsome, Barker and Harvey. The court, therefore, concludes as a matter of law that there was no contractual obligation contained in the 1984 Contract obligating the employers to pay drive time to the plaintiffs in conjunction with Wilmington work.

Having concluded that the drive time language was deleted in the 1984 Contract, and that the employers therefore had no obligation thereunder to pay drive time, the court ORDERS that the October 31, 1987, Order be AMENDED to reflect said conclusion as an additional basis for ALLOWING summary judgment in favor of all defendants except defendants Adams and Local 1838.

■ Furthermore, since plaintiffs' cause of action against defendants Adams and Local 1838 is for alleged breach of their

---

**2.** Nor does any evidence suggest a negative reply to Mr. Barker's letter.

duty of fair representation in the *administration* of the 1984 Contract, there being no contractual obligation to pay plaintiffs drive time, said defendants owed no duty to plaintiffs in regard thereto. Consequently, no genuine issue of material fact remains as to Adams and Local 1838 requiring resolution by a fact finder. For this reason, SUMMARY JUDGMENT is herewith entered in favor of defendants Nelson Adams and Local 1838.

The following pending motions are rendered MOOT by the fact that summary judgment now has been ordered in favor of all defendants; hence these motions will not be addressed.

1. Plaintiffs' Motion for Reconsideration and to Amend Complaint.
2. ILA's Motion to Vacate Plaintiffs' Notice to Take Depositions and for Protective Order.
3. Plaintiffs' Motion to disqualify the law firm of Thomas W. Gleason, Jr.
4. Plaintiffs' Motion to Permit an Immediate Appeal.
5. Plaintiffs' Motion for Preclusion, or in the Alternative, for Expedited Discovery.

SO ORDERED.[3]

---

**3.** If the gravamen of plaintiffs' complaint is that the union defendants in the 1984 negotiations bargained away their drive time rights under the prior contract, their recourse against such defendants is in the political process within the union, or in their decision to continue to be represented thereby.